## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES R. ELLIOT,

         Plaintiff,

    v.

PENNSYLVANIA
INTERSCHOLASTIC ATHLETIC
ASSOCIATION, INC., ("PIAA"), *et
al*.,

         Defendants.

No. 3:19-CV-1934

(Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 15, 2020

## I.   BACKGROUND

On May 6, 2020, Plaintiff, James R. Elliot ("Elliot") filed a three-count amended complaint against Defendants the PIAA, Frank Majikes ("Majikes") and William Schoen ("Schoen"), in their individual and official capacities, and Luke Modrovsky ("Modrovsky").  On May 20, 2020, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The Court grants in part and denies in part the Defendants' motion.

For the claims that shall be dismissed, Plaintiff will be provided leave to further amend his complaint.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[8]

---

[1]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[2]   *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

[3]   *Id.* at 326 (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]   *Id*. at 327.

[5]   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rᴇᴠ. Lɪᴛɪɢ. 313, 316, 319-20 (2012).

[6]   550 U.S. 544 (2007).

[7]   556 U.S. 662, 678 (2009).

[8]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[11]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[12]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[14]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts

---

[9]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[10]  *Id.* at 678.
[11]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).
[12]  *Twombly*, 550 U.S. at 556.
[13]  *Iqbal*, 556 U.S. at 679.
[14]  *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

alleged in the light most favorable to [the plaintiff]."[15]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[16]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[19]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[20]  However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[21]  It is permissible to

---

[15]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[16]  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[17]  *Iqbal*, 556 U.S. at 678.

[18]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[19]  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[20]  *See id.;* Fed. R. Civ. P. 12(d).

[21]  *Id.* at 134.

consider full text of documents partially quoted in complaint.[22]  It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[23]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[24] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[25]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[26]  In this matter, I find that these conditions have been met as to the Defendant's attachments (PIAA's bylaws, policies and procedures, and official's manual).[27]  I will consequently consider these attachments.

### B.     Facts Alleged in the First Amended Complaint

The facts alleged in the first amended complaint, which I must accept as true for the purposes of this motion, are as follows.

Plaintiff Elliot is an adult individual living in Scranton, Pennsylvania, and a registered sports official with the PIAA.[28]  The PIAA is an organization that was

---

[22]  *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996).

[23]  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

[24]  *Faulkner*, 463 F.3d at 134.

[25]  *Id.; see also, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[26]  *Id.*

[27]  *See* 2018-19 PIAA Constitution and By-Laws (ECF No. 20-1); 2018-19 PIAA Policies and Procedures (ECF No. 20-2); PIAA Registered Sports Officials' Manual (ECF No. 20-3).

[28]  First Am. Comp. (ECF. No. 17) at ¶¶ 2, 17.

established by a group of high school principals in order to "eliminate abuses, establish uniform rules, and place interscholastic athletics in the context of secondary education."[29]  Otherwise stated, "[t]he purpose and function of [the] PIAA is to develop and enforce rules, which are authorized or adopted by the member schools, regulating interscholastic athletic competition."[30]  As part of this mission, the PIAA hires sports officials from a pool of qualified officials to officiate games among members schools.[31]

The PIAA is divided into 12 geographic Districts in the state, with each District having both a District Committee elected by the member schools and a District Chairman, also elected, who represents that District on the PIAA Board of Directors.[32]  Further, officials of the PIAA must join Chapters within a District which correspond to a specific sport and area in the District where they will officiate games.[33]  For the purposes of this action, it is further important to note that each District has an Officials' Representative, who, after being elected to the position, serves as a member of the District Committee, assigns officials to regular season games, and recommends officials for inter and intra District playoff games.[34]  District 2, which is the District in which Elliot officiates, also has a

---

[29]  *Id*. at ¶ 10.
[30]  *Id*. at ¶ 11.
[31]  *Id*. at ¶¶ 14-16.
[32]  *Id*. at ¶¶ 12, 163
[33]  First Am. Comp. at ¶¶ 16, 18.
[34]  *Id*. at ¶¶ 5-6, 85.

District (Basketball) Interpreter who aids in the interpretation of relevant officiating rules in the District and who is selected, in part, through a recommendation by the Officials' Representative.[35]

Elliot has been a registered official with the PIAA since 1998.[36]  Elliot is a member of the Scranton Basketball Chapter, the Lackawanna County Baseball Chapter, and the Wyoming Valley Football Chapter.[37]   Elliot has also served as the rules interpreter for the Scranton Basketball Chapter since 2013.[38]  Elliot has further served as an official for district and state playoff games and tournaments in each sport he officiates.[39]  He has thus been acknowledged by the PIAA to be a "very good official."[40]

In December 2016, Dave Elliot, Plaintiff's brother, ran against William Schoen for the position of the PIAA District 2 Officials' Representative.[41]  In January 2017, Schoen was declared the winner of the election.[42]  Soon thereafter, due to alleged animosity towards the Elliot family for supporting Dave Elliot's campaign against Schoen, Schoen began retaliating against Elliot and his family.[43]

---

[35]  *Id*. at ¶¶ 45-46, 49, 51, 59, 62.
[36]  *Id*. at ¶ 17.
[37]  *Id*. at ¶ 18.
[38]  First Am. Compl. at ¶ 22.
[39]  *Id*. at ¶ 25.
[40]  *Id*. at ¶ 27.
[41]  *Id*. at ¶ 30.
[42]  *Id*. at ¶ 31.
[43]  First Am. Comp. at ¶¶ 35.

Schoen first, in February and March 2017, no longer used Mr. Elliot's sister as the "ticket-taker" for PIAA playoff games despite past years of being hired.[44] Schoen then, in September 2017, forced Elliot's brother to transfer from the Lackawanna League Football Chapter to the Wyoming Valley Football Chapter.[45] Schoen then recommended, in December 2017, Bruce Weinstock to be the new District 2 (Basketball) Interpreter over Elliot, despite Elliot's qualifications for the position and despite assurances to the contrary.[46] District Chairman Frank Majikes, as a supporter of Schoen, also participated in this recommendation.[47] Further, in 2017 and 2018, following Schoen's election, despite being regularly assigned to officiate such games, Schoen did not assign Elliot to a state playoff game.[48] In response to Schoen's actions, Elliot then felt forced to transfer from the Lackawanna County Football Chapter to the Wyoming Valley Football Chapter.[49]

Out of fear of further retaliation, Elliot decided to run against Schoen in the 2018 Officials' Representative election.[50] As a local chapter nomination is required to run for the position, Schoen attempted to dissuade the Wyoming Valley Football Chapter from nominating Elliot.[51] Elliot was thus instead nominated to

---

[44]   *Id.* at ¶ 36.
[45]   *Id.* at ¶¶ 37-38.
[46]   *See id.* at ¶¶ 39-66, 74-79, 81-82.
[47]   *Id.* at ¶¶ 4, 68-73, 81.
[48]   First Am. Comp. at ¶¶ 85-86, 92, 95, 106.
[49]   *Id.* at ¶¶ 100-01, 104.
[50]   *Id.* at ¶ 112.
[51]   *Id.* at ¶¶ 113, 116-18.

the position by the Scranton Basketball Chapter.[52]  During the election, Luke Modrovsky, departmental intern and sports official for the PIAA, provided "up-to-date election tabulation" to certain officials, including Schoen and Majikes, in order to support Schoen's re-election.[53]  Finally, in 2019, despite being previously assigned to such games, Elliot was not assigned to any District 2 basketball playoff games by Majikes, who had been delegated the responsibility, in conjunction with third party Joe Ross, by Schoen.[54]

### C.    Analysis

Elliot alleges three different claims against the PIAA, Majikes, Schoen, and Modrovsky in response to this course of events.  These claims are a 42 U.S.C. § 1983 ("Section 1983") retaliation claim, a violation of Pennsylvania's Non-Profit Corporation Act ("NPCA"), and a breach of contract claim under Pennsylvania Law.[55]

### 1.    Plaintiff's Section 1983 Claim

Section 1983 provides a cause of action to redress violations of federal law committed by state officials.[56]  Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights.[57]  Here,

---

[52]  *Id*. at ¶¶ 120.
[53]  First Am. Comp. ¶¶ 7, 123-24.
[54]  *Id*. at ¶¶ 132-34, 138, 142.
[55]  *Id*. at ¶¶ 146-155, 155-161, 221-22, 224.
[56]  *See* 42 U.S.C. § 1983.
[57]  *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 815 (1985).

Elliot brings his Section 1983 claims against the PIAA and its officials for alleged retaliation against Elliot, for certain speech, in violation of the First Amendment.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."[58]  To bring a claim, under Section 1983, for First Amendment retaliation, the plaintiff must prove "(1) that he 'engaged in [First Amendment-]protected activity,' (2) that the defendant's allegedly retaliatory action was 'sufficient to deter a person of ordinary firmness from exercising [his First Amendment] rights,' and (3) that there was a 'causal connection between the protected activity and the retaliatory action.'"[59]

Additionally, as applied to governmental entities, to hold such an entity liable under Section 1983, the plaintiff's constitutional rights must have been violated by an official policy or custom of the entity.[60]  As applied to individual defendants, "[t]he Third Circuit has recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused constitutional harm, and another under which they can be liable if they participated in violating

---

[58]   *McGee v. Conyngham Township*, 2018 WL 2045437, at *3 (M.D. Pa. 2018) (internal citations and quotations omitted).

[59]   *Id.* at *3 (quoting *Lauren W ex rel. Jean W v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[60]   *Watson v. Witmer*, 183 F.Supp.3d 607, 614 (M.D. Pa. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 680-94, 98 (1978))

plaintiff's rights, directed others to violate them, or as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'"[61]

Defendants contend that Elliot's Section 1983 claims fail for multiple reasons. First, for all the allegedly retaliatory acts that occurred before Elliot ran for the Officials' Representative position himself, Defendants argue that, to the extent that such acts can be deemed retaliatory, they can only be deemed to be retaliation against Elliot's brother and not against Elliot himself because Elliot was not exercising any personal First Amendment rights by simply supporting his brother.[62] Second, Defendants claim that Elliot has failed to show that any policy or practice of the PIAA has caused harm to Elliot; rather, such harm has only allegedly been caused by certain individuals within the PIAA.[63] Third, Defendants claim that to the extent the Section 1983 claim is brought against Schoen, Majikes, and Modrovksy, the individuals either were without authority to individually act on the issues which aggrieved Elliot or that, for the acts that occurred after Elliot personally ran for the Officials' Representative position, Elliot was not sufficiently harmed to be able to assert his claims.[64] In examining these challenges, the Court will first turn to the proper Defendants in the action before turning to whether all the elements of a First Amendment retaliation claim are met.

---

[61] *Fielder v. Stroudsburg Area School District*, 427 F.Supp.3d 539, 551 (M.D. Pa. 2019) (quoting *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016)).

[62] Defs' Brief in Support of Mot. to Dismiss Am. Compl. (ECF. No. 20) at 13-14.

[63] *Id*. at 14-17.

[64] *Id*. at 17-20.

### a.    The PIAA's Liability as an Entity

Defendants argue that the PIAA is an inappropriate defendant in this action because, as an organization, it can only be held liable if there was a "policy, practice, or custom" which resulted in the deprivation of the plaintiff's constitutional rights, and Elliot has failed to allege the existence of such a policy.[65] Elliot responds that the PIAA is liable because they supported the practice of having Majikes and Schoen choose and confirm the District Interpreter, and designate officials for playoff games, thereby validating the alleged retaliatory actions taken by Majikes and Schoen against Elliot.[66]

As stated, to hold a governmental entity liable under Section 1983 for violating a plaintiff's constitutional rights, the rights must have been violated by an official policy or custom of the entity.[67]  More specifically, "[t]o establish liability, plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy or custom and the injury suffered."[68]  A policy exists "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action

---

[65]   *Id*. at 14-17.

[66]   Ptf's Brief in Opposition to Mot. Dismiss Am. Compl. (ECF. No. 21) at 12-14.

[67]   *Watson*, 183 F.Supp.3d at 614 (citing *Monell*, 436 U.S. at 680-94, 98 (1978)).  Section 1983 entity liability can also be based on a failure to train theory, but Elliot, in his complaint and briefs opposing this motion to dismiss, does not base his claims against the PIAA on any failure to train theory.  The Court, further considering that the elements of such claim are not plead, will thus not consider liability under such theory.  *See Cuovo v. Pocono Mountain School District*, 2019 WL 7105560, at *4 (M.D. Pa. 2019) (discussing liability for an entity under failure to train theory).

[68]   *Id.* (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984))

issues an official proclamation, policy, or edict."[69]  A custom exists when the "practices of state officials [are] so permanent and well settled as to virtually constitute law."[70]

As to causation, "the plaintiff must allege and prove facts from which it can be inferred that the alleged policy or custom was the proximate cause of plaintiff's harm."[71]  "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue."[72]  "A sufficiently close causal link between a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom."[73]  Otherwise stated, the policy or custom must be the "moving force behind an injury.[74]

In the context of the operation of the PIAA, at least one court within this Circuit has decided what does and does not constitute a policy or custom with regard to Section 1983 entity liability.  In that case, *Holmes v. Pennsylvania Interscholastic Athletic Assoc.*, that court found that a plaintiff failed to plead the

---

[69]   *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal citation and quotations omitted).

[70]   *Id.* (internal citation and quotations omitted).

[71]   *Pearson v. Miller*, 988 F. Supp. 848, 858 (M.D. Pa. 1997).

[72]   *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990).

[73]   *Id.* at 851(quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987) (alterations omitted)).

[74]   *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009) (internal quotation marks and citation omitted); *see also Dorley v. South Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 240 (W.D. Pa. 2015)

existence of a policy or custom of the PIAA when that plaintiff did not single out any policy which required an assigning official to discriminate against certain game officials in deciding who was assigned to which game, but rather, only plead that the assignment was left to the discretion of the assignor.[75] More generally, this Court has found that where a plaintiff brings claims against individual defendants and their employer under Section 1983, in order to proceed with that claim, the plaintiff must actually allege a policy or custom of the employer, and not merely that the two employees worked for the employer.[76]

Looking to causation, the court in *Dorley v. South Fayette Twp. Sch. Dist.* found that claims against a school district had to be dismissed, under *Monell*, when the plaintiff failed to allege facts connecting the district to the actions of its individual coaching officials who instituted certain training drills in violation of a plaintiff's rights.[77] In the context of local elections, the court in *Hodinka v. Delaware County* found that where plaintiffs failed to show that a policy of allowing certain local officials to have authority in helping to administer the election proximately caused their injuries, the claim could not proceed on a policy or custom theory.[78] That is, the *Hodinka* court found that an alleged policy or

---

[75]   2006 WL 8458627, at *5 (E.D. Pa. 2006).

[76]   *Turner v. Wetzel*, 2018 WL 7253304, at *3-4 (M.D. Pa. 2018), *report and recommendation adopted*, 2019 WL 480484 (M.D. Pa. 2019).

[77]   129 F. Supp. 3d 220, 240-42 (W.D. Pa. 2015); *see also Patrick v. Great Valley School Dist* 296 Fed.Appx. 258, 262-63 (3d Cir. 2008) (non-precedential) (holding same).

[78]   759 F.Supp.2d 603, 616 (E.D. Pa. 2011).

custom giving local officials discretion to perform certain activities, including

activities related to a local election, divorced from a causal link between that

policy and the officials' actions, could not give rise to Section 1983 entity liability

under a policy or custom theory.[79]  The *Hodinka* court further evaluated the

plaintiff's claims under a "policy-making authority" standard as it pertained to the

relevant officials, and found that only where that official had final unreviewable

authority to make decisions or set policy, you can find liability against the

municipality.[80]

Here, in his first amended complaint, Elliot does not point to any policy or

custom of the PIAA that singled him out for discrimination, nor does he point to

personal involvement by the PIAA in the decision to appoint officials.  Instead, in

his amended complaint, Elliot points to a series of individual actions by Schoen,

Majikes, and Modrovsky which resulted in his injuries and which were caused by

the individual Defendants' alleged animosity towards Elliot, not any animosity on

the part of the PIAA.[81]  That is, in line with *Holmes v. Pennsylvania*

*Interscholastic Athletic Assoc.*, at no point in his complaint does Elliot claim that

any of the individual actions that affected him were a part of a larger policy or

---

[79]  *Id.*; *see also Desi's Pizza, Inc. v. City of Wilkes Barre*, 2006 WL 2460881, at *29 (M.D. Pa. 2006 (dismissing claim for failing to point to policy or custom which led to deprivation of constitutional rights); *O'Neal v. Bedford County*, 2017 WL 244866, at *5 (W.D. Pa. 2017) (same).

[80]  *Id.*

[81]  *See generally* First Am. Compl. at ¶¶ 28-153.

custom of the PIAA to exclude him from consideration for any officiating

opportunity or any position within the PIAA.  In fact, mention of a larger policy or

custom of the PIAA, in line with *Turner v. Wetzel*, is conspicuously absent from

Elliot's amended complaint.

Elliot attempts to address this issue by claiming in his brief in opposition

that the playoff game nomination process and the district interpreter nomination

process are the PIAA policies which caused his injuries.[82]  Elliot further claims that

the PIAA has failed to specify any guidelines for nomination of people like himself

to certain assignments or positions within the PIAA.[83]  These declarations,

however, in line with *Dorley v. South Fayette Twp. Sch. Dist.* and *Hodinka v.*

*Delaware County*, fail to show how the alleged policies of the PIAA were the

driving force behind his injuries.  Instead, Elliot consistently makes clear in his

amended complaint that Schoen and Majikes negative personal feelings towards

Elliot, and not the larger policies of the PIAA, drove the decision to exclude him.

That is, there is nothing in the PIAA's policies which singled out Elliot for

disparate treatment or which would cause him injury absent the individual actions

of Schoen and Majikes.  The attenuated link thus propagated by Elliot is the same

sort of link between a policy and a deprivation which has been disapproved of by

---

[82]   Ptf's Brief in Opposition to Mot. Dismiss Am. Compl at 13.
[83]   *Id.*

the *Dorley* and *Hodinka* courts, and which warrants dismissal of Elliot's municipal liability claims against the PIAA.

Accordingly, Elliot's Section 1983 claims against the PIAA in Count I will be dismissed because Elliot does not allege sufficient facts supporting direct liability against the PIAA.

### b.   Individual Liability against Schoen, Majikes, and Modrovsky

Defendants also contend that Schoen, Majikes, and Modrovsky are inappropriate individual defendants in this action because Elliot: (1) did not properly allege that the PIAA retaliated against him so as to allow for individual Section 1983 liability against their individual employees; (2) did not otherwise properly allege that  Modrovsky was a state actor so as to allow for his individual Section 1983 liability; (3) and that, as it pertains to post-election events,[84] did not properly allege that Schoen was responsible for the decision to not assign Elliot to a District playoff game for basketball in Spring 2019.[85]

Elliot responds that: for both pre and post-election events, Schoen and Majikes were both official decision makers of the PIAA for the purposes of Section 1983 liability as made clear by their binding determinations as to his game

---

[84]   As stated earlier, the Defendants dispute whether the events that occurred prior to Elliot's own run for office can be considered for the purposes of his First Amendment claim.  *See* Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 14-17.  They thus only challenge whether the individual defendants can be held liable for the post-election events.

[85]   Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 13-14.

assignments and their upper-level positions in the PIAA; and that Modrovsky was a state actor due to his employment with the PIAA and is a proper defendant due to his conspiring with Schoen and Majikes in their retaliation against Elliot.[86]

To begin with, courts within this Circuit have recognized that the PIAA is a state actor for the purposes of § 1983 liability.[87]  Accordingly, courts have recognized that actions of employees of the PIAA can give rise to individual liability for those employees under Section 1983 where they have violated a plaintiff's constitutional rights because, by virtue of working for the PIAA, they are acting under the color of state law.[88]  Further, as noted above, to state a Section 1983 claim against state actors in their individual capacities, a plaintiff must allege either that the individual actors engaged in an unconstitutional policy or that they had personal involvement in the alleged constitutional violations.[89]

Here, the Plaintiff clearly alleges that Schoen, Majikes, and Modrovsky were all state actors to the extent that they worked for the PIAA, and he further clearly alleges that they directly violated his constitutional rights by retaliating against him for either supporting his brother's campaign or campaigning himself for various

---

[86] Ptf's Brief in Opposition of Mot. Dismiss Am. Compl. at 14-18.

[87] *See, e.g., Rottmann v. Pennsylvania Interscholastic Ass'n., Inc.*, 349 F.Supp.2d 922, 926 (W.D. Pa. 2004) (citing *Brentwood Acad. V. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288 (2001)); *Holmes*, 2006 WL 8458627, at *5 (citing same).

[88] *See Holmes*, 2006 WL 8458627, at *5-6.

[89] *Fielder*, 477 F.Supp.3d at 551 (quoting *Parkell*, 833 F.3d at 330).

positions with the PIAA.[90]  These allegations are consistent with the pleading standards for bringing Section 1983 claims against individual defendants.[91]  To the extent that Modrovsky was not directly involved in the retaliation against Elliot as he only assisted Schoen and Majikes and did not directly retaliate against Elliot, the first amended complaint further makes clear that Modrovksy conspired with Schoen and Majikes to retaliate against Elliot, which is also an acceptable method to implicate an individual defendant in Section 1983 actions.[92]

As such, Elliot has sufficiently plead that the individual Defendants can be held liable under Section 1983 so long as the allegations meet the elements of the specific claim.

### c.      Elements of First Amendment claim

Having dismissed the Section 1983 claim against the PIAA and further finding that the individual Defendants are properly alleged Defendants under Section 1983, I now turn to whether Elliot has properly alleged the elements

---

[90]   *See* First Am. Compl. at ¶¶ 4-7, 35, 83-84, 92, 119-121,125, 128, 139, 148-150; *see also Wagner v. Holtzapple*, 101 F.Supp.3d 462, 472 (M.D. Pa. 2015) (holding that, to assert a Section 1983 claim against individuals, plaintiff must plead that individuals were (a) state actors who committed certain actions, and (b) that those actions deprived the plaintiff of his constitutional rights).

[91]   *See Smith v. School Dist. Of Philadelphia*, 112 F.Supp.2d 417, at 433 (E.D. Pa. 2000) (holding that plaintiff adequately alleged Section 1983 claims against various school district officials in their individual capacities by specifying that they had personal involvement in the deprivation of his rights).

[92]   See *Damiano v. Scranton Sch. Dist.,* 135 F. Supp. 3d 255, 282 (M.D. Pa. 2015) (holding that alleged conspiracy to violate a plaintiff's First Amendment rights implicated multiple defendants and survived motion to dismiss); *see also Dennison v. Pennsylvania Dep't of Corr.*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003) (denying summary judgment for multiple individual defendants on First Amendment retaliation claim where defendant adequately alleged the individuals conspired together to violate his rights).

necessary to sustain First Amendment retaliation claims against Majikes, Schoen, and Modrovsky.  As previously stated, to properly bring a Section 1983 First Amendment claim, the plaintiff must allege "(1) that he 'engaged in [First Amendment-]protected activity,' (2) that the defendant's allegedly retaliatory action was 'sufficient to deter a person of ordinary firmness from exercising [his First Amendment] rights,' and (3) that there was a 'causal connection between the protected activity and the retaliatory action.'"[93]

### i.      First Amendment Protected Activity

As to the first element, the Defendants argue that any injuries which befell Elliot before he personally ran for the Officials' Representative position cannot be a result of retaliation as Elliot failed to engage in any free speech before the election.[94]  That is, the Defendants specifically dispute that Elliot's support of his brother's campaign constitutes protected free speech for the purposes of a First Amendment retaliation claim.[95]  The Defendants thus do not challenge that any acts which occurred after Elliot's run for the Officials' Representative position constitute constitutionally protected speech.[96]  Elliot responds that, according to the

---

[93]   *Smith,* 112 F.Supp.2d at 433 (quoting *DeFlaminis*, 480 F.3d at 267); *McGee*, 2018 WL 2045437, at *3; *Pribula*, 599 F. Supp. 2d 564, 573 (M.D. Pa. 2009)

[94]   The Defendants do not dispute that Elliot engaged in protected free speech which allegedly resulted in retaliation by personally running for the Officials' Representative position against Schoen.  *See* Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 13-14.

[95]   Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 13-14.

[96]   *Id*. (asserting that "[p]laintiff did not exercise any free speech rights until December 2018.")

governing law, his actions supporting his brother's campaign constitute protected free speech under the cause of action.[97]

The law of this Circuit makes clear that political activity, including supporting a candidate, constitutes protected free speech for the purposes of Section 1983 First Amendment retaliation claims.[98]  That is, campaigning for a particular candidate and speaking against other candidates, in addition to personally running for a position, has consistently been found to be a protected activity under the First Amendment.[99]

Cases on this point further state that, to constitute a protected activity, the support of political campaigns must be done as a private citizen, not as a part of one's public duties, and must be a matter of public concern which does not interfere with the individual's job duties.[100]  However, this point is not only undisputed by the parties, but this Court can reasonably infer that Elliot's support of his brother's campaign was done outside his official duties as an official for the PIAA and was a matter of public concern relating to the administration of high

---

[97]   Ptf's Brief in Opposition of Mot. Dismiss Am. Compl. at 9-12.

[98]   *See Young v. Kisenwether*, 902 F.Supp.2d 548, 555 (M.D. Pa. 2012) (quoting *Brown v. Hartlage*, 456 U.S. 45, 53 (1982) ("[A] 'candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates.'").

[99]   *Id.* at 555; *see also Ferraioli v. City of Hackensack Police Dept.*, 2010 WL 421098, at *5 (D.N.J. 2010) (holding that police officer's support of candidate in labor union election constituted protected speech under First Amendment).

[100]   *See Ferraioli*, 2010 WL 421098 at *5; *see also Falco v. Zimmer*, 767 Fed.Appx.288, 303-04 (3d Cir. 2019) (non-precedential) (discussing application of First Amendment in political retaliation claims); *Hill v, Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (explaining protections under the First Amendment).

school sports generally which did not interfere with his specific duties as an official.[101]

As such, Elliot's activities of supporting his brother's campaign, and running personally for the Officials' Representative position clearly constitute protected activities at this stage in the litigation.

### ii.        Retaliatory Action Sufficient to Deter

The Defendants further claim that for whatever alleged injuries occurred to Elliot, they were *de minimus* and hardly enough to constitute a constitutional injury because not selecting Elliot for certain games, according to the Defendants, did not stop him from getting other assignments or otherwise deter him from the exercise of his rights.[102]  Elliot responds that the Defendants' argument fails to acknowledge the ongoing pattern of retaliation that took place over the course of three years as fully alleged in his amended complaint, which extends beyond simply not being assigned to certain games.[103]

For First Amendment Retaliation claims, "the plaintiff must [ ] assert that an adverse employment action was taken against her."[104]  "Courts have found that retaliatory conduct constitutes an adverse employment action when the employer

---

[101]  *See id.* at *5 (discussing how support of a candidate for a labor union position is a matter of public concern unrelated to duties related to membership in the same union).

[102]  Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 19-20.

[103]  Ptf's Brief in Opposition of Mot. Dismiss Am. Compl. at 18-20.

[104]  *Smith v. Cent. Dauphin Sch. Dist.*, 419 F. Supp. 2d 639, 647 (M.D. Pa. 2005) (citing *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 801 (3d Cir. 2000).

makes decision relating to hiring, rehiring, promotion, transfer, or recall."[105]  "'On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.'"[106]  Specifically, the Court in *Smith* found an adverse action was sufficiently alleged when a school refused to hire a plaintiff for an assistant coaching position in retaliation for engaging in protected First Amendment activity.[107]  The Court did not find it persuasive that the plaintiff was already employed as a teacher at the school and did not consider the specific amount of compensation of the job as a factor in their judgment so much as they considered that it would have afforded the plaintiff some additional compensation.[108]  In *Ferraioli v. City of Hackensack Police Dept*, the court found that simply being relegated to a "less favorable" post within an organization, can also constitute an adverse employment action.[109]

Bearing these cases in mind, as compared to the Plaintiff's allegations concerning a continuous series of adverse actions including being passed over for favorable positions with the PIAA and favorable officiating appointments, it is clear that Elliot has adequately alleged adverse employment actions sufficient to

---

[105]  *Id.* (citing *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cit. 2003).
[106]  *Id.* (quoting *Brennan*, 350 F.3d at 419).
[107]  *Id.* at 647-48.
[108]  *Id.* at 647.
[109]  2010 WL 421098, at *6.

state a cause of action under the First Amendment.  While the Defendants further try to defeat this action by calling Elliot an independent contractor for the PIAA, this Court notes that independent contractors for public entities like the PIAA can bring First Amendment retaliation claims the same as employees.[110]

### iii.    Causal Connection between Protected Activity and Retaliatory Action

The Defendants do not specifically dispute the causation prong of the claim nor does the Plaintiff argue it in his opposition brief.  This prong of the claim is nevertheless clearly met as Elliot alleges acts of free speech in both supporting his brother's campaign and running for the Officials' Representative position himself followed by a series of retaliatory actions as a result of those acts of speech.[111]

### 2.    Plaintiff's Non-Profit Corporation Act Claim

The NPCA, properly referred to as the Nonprofit Corporation Law of 1988, allows "any person aggrieved by a corporate action" to apply to the court for relief.[112]  The Court first notes that, for the purposes of standing, the Pennsylvania legislature amended Section 5793 of the NPCA in 2013 to expand those who can sue under the statute from certain members of the corporation to any person

---

[110] *See Luongo v. Pennsylvania State Police*, 156 F.Supp.3d 599, 610 (E.D. Pa. 2016) (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996) ("In other words, independent contractors with the government . . . are protected by the First Amendment and are treated similarly to public employees for purposes of First Amendment retaliation claims.").

[111] *See Hill*, 455 F.3d at 243 (discussing causation prong of First Amendment retaliation analysis).

[112] 15 Pa.C.S. § 5793(a).

"aggrieved" by a corporate action.[113]  As to what constitutes a corporate action

under the NPCA, Section 5791 of the statute defines such as: the election or

selection of "members, directors, members of an other body or officers of a

nonprofit corporation;" or as "that taking of any action on any matter that is

required" under the NPCA, some other relevant law, or  the corporation's

bylaws.[114]  Being a member includes being one with voting rights in the

corporation or one who was specially given voting rights by bylaw.[115]  Voting

rights means the right to vote on the election or removal of directors or some other

special body of the corporation.[116]  Other body is defined as some group which was

delegated powers, by bylaw, that are otherwise typically reserved to members or

directors of the corporation.[117]

The Defendants argue that Elliot fails to state a claim under the NPCA

because: (a) he has failed to allege a specific provision of the NPCA, or of the

PIAA's constitutions or by-laws which has been violated; (b) there is no NPCA

provision appurtenant to this case; and (c) he does not have standing, as a volunteer

and non-member of the PIAA, to bring a claim under the NPCA.[118]  Elliot

---

[113]  *See In re Foundation for Anglican Christian Tradition*, 103 A.3d 425, 431 n.8 (Pa. Cmwlth. Ct. 2014) (discussing expansion of statute without discussing who may now be eligible for relief under it).
[114]  15 Pa.C.S. § 5791.
[115]  *Id*. at § 5103.
[116]  *Id*.
[117]  *Id*.
[118]  Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 20-22.

responds, citing the above referenced provision of the NPCA which gives courts the authority to review corporate actions,[119] alleging that the PIAA constitution requires a fair election, which Schoen and Majikes failed to ensure.[120]

To be clear, the actions which Elliot challenges in his NPCA claim is limited to the alleged failure by the PIAA to hold a free and fair election for the Officials' Representative position as is allegedly required under the PIAA's bylaws. First, given the expansion of the statute to "any person aggrieved," and given Pennsylvania's broad definition of aggrieved, including in the context of the NPCA, as anyone with "immediate interest in the outcome of litigation,"[121] the Court finds that, at this stage, Elliot has alleged that he was sufficiently aggrieved by Schoen's, Majikes', and the PIAA's actions to state a claim. This is because such election allegedly directly cost him the opportunity to become the Officials' Representative. Second, to qualify as a challengeable corporate action, the election would need to be such that it was either the election of a qualifying member or official within the PIAA or a required action under the bylaws, in which the relevant Defendants acted so as to aggrieve Elliot.[122] This element is also met here

---

[119] *See* 15 Pa.C.S. § 5793.

[120] Ptf's Brief in Opposition of Mot. Dismiss Am. Compl. at 20-24.

[121] *Petty v. Hospital Service Ass'n of Northeastern Pennsylvania*, 967 A.2d 439, 448 (Pa. Cmwlth Ct. 2009) (citing *Bergdoll v. Kane*, 557 Pa. 72 (Pa. 1999)); *see also Traher v. Republic First Bancorp, Inc.*, 432 F. Supp. 3d 533, 542 (E.D. Pa. 2020) (discussing what it means to be aggrieved, under Pennsylvania law, for the purposes of a corporate action).

[122] *Ciamaichelo v. Indep. Blue Cross*, 928 A.2d 407, 410 (Pa. Commw. Ct. 2007); *High River Ltd. P'ship v. Mylan Labs., Inc.*, 383 F. Supp. 2d 660, 665 (M.D. Pa. 2005).

as the Defendants' do not dispute, and as bylaws attached to the their brief in opposition make clear, that the Officials' Representative "shall be elected" every two years.[123]  The PIAA, Schoen, Majikes, and Modrovsky acted, pursuant to this bylaw, by conducting this election.[124]  If the PIAA and the other Defendants conducted this action in such a way as to aggrieve Elliot, which is what he alleges, the claim would be proper.  This claim may proceed.

### 3.    Plaintiff's Breach of Contract Claim

To state a breach of contract claim in Pennsylvania, a plaintiff must plead three elements: "(1) the existence of a contract, including its essential terms; (2) a breach of that contract; and (3) resultant damages."[125]

The Defendants argue that Plaintiff's breach of contract claim should be dismissed because he fails to plead the existence of a contract, or, to the extent he pleads a contract, he does not properly plead that such contract was violated.[126] Elliot responds that the PIAA bylaws and constitution are a contract between the entities, and give rise to a claim against the PIAA for breach of contract due to its failure to abide by the contract's terms, *i.e.*, to hold a fair election.[127]

---

[123]  2018-19 PIAA Constitution and By-Laws at 9; PIAA Registered Sports Officials' Manual at 31.

[124]  *Id.*

[125]  *Omicron Sys., Inc. v. Weiner,* 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (internal citation and quotations omitted); *see also Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 587–88 (W.D. Pa. 2017) (applying Pennsylvania breach of contract law to claim in federal court).

[126]  Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 18-20.

[127]  Ptf's Brief in Opposition of Mot. Dismiss Am. Compl. at 25-26.

Instructively, the court in *Cessna v. REA Energy Coop., Inc.* dismissed an

action brought as a breach of contract claim pursuant to violation of an entity's

bylaws because the plaintiff failed to plead how the defendant specifically

breached particular bylaw terms.[128]  Similarly here, as plead, the Plaintiff's

allegations fail to make clear how the Defendants breached a bylaw term.  As

opposed to the NPCA, which allows parties aggrieved by corporate actions to bring

claims in court, and thus allows Elliot to bring claims for actions taken pursuant to

a relevant bylaw, in breach of contract claims, the plaintiff must show specific

contract terms which were violated.  The relevant terms in the bylaws here,

assuming they constitute a contract, merely state that an election must be held, and

fail to specify the method and manner of the election.  Therefore, as this breach

claim is based on uncertain terms not clearly violated, it will be dismissed.

### 4.    Attorney's Fees

Title 42 U.S.C. § 1988(b) allows for the recovery of attorney's fees to the

prevailing party in a Section 1983 action.[129]  The Defendants argue that the

Plaintiff's claim for fees should be dismissed because of his *pro se* status,[130] and

Plaintiff asserts that such argument is not yet ripe.[131]  Consistent with Plaintiff's

argument as to timing, at this stage, with some of the Plaintiff's claims surviving

---

[128]  *Cessna*, 258 F. Supp. 3d at 587–88.
[129]  42 U.S.C. § 1988(b).
[130]  Defs' Brief in Support of Mot. to Dismiss Am. Compl. at 24.
[131]  Ptf's Brief in Opposition of Mot. Dismiss Am. Compl. at 26

dismissal and with the remaining claims to be dismissed without prejudice there is no prevailing party to which to award attorney's fees, and no non-prevailing party to which to deny attorney's fees.[132]  The Court will deny Defendants' motion at this time as it applies to attorney's fees.

## III.   CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted in part and dismissed in part.  "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[133]  "Circuit case law, however, holds that leave to amend must be given in this situation as well."[134]  As such, Plaintiff  is granted leave to amend and will be given fourteen (14) days from today's date to file an amended complaint.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

!

---

[132] *McNeil v. Pennsylvania*, 2006 WL759670, at *4 (M.D. Pa. 2006) (denying defendant's motion to dismiss request for attorney's fees).
[133] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)
[134] *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997).