# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES R. ELLIOTT,

   Plaintiff,

  v.

PENNSYLVANIA
INTERSCHOLASTIC ATHLETIC
ASSOCIATION, INC., *et al.*,

   Defendants.

No. 3:19-CV-01934

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 31, 2022

## I.   BACKGROUND

On April 28, 2021, Plaintiff James R. Elliott filed a Third Amended Complaint against Defendants Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA"), Frank Majikes, William Schoen, Luke Modrovsky, and Patrick Gebhart. Elliott claims violations of the United States Constitution and the Pennsylvania Nonprofit Corporation Act ("PNCA"), 15. Pa.C.S. §§ 5505–5524.

On May 12, 2021, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion to dismiss is now ripe for disposition; for the reasons that follow, it is denied in part and granted in part. Further leave to amend is not granted. Defendants are directed to file an answer.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a claim"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

---

[1]    *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]    *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[3]    *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]    *Id.* at 327.

[5]    Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[6]    550 U.S. 544 (2007).

[7]    556 U.S. 662 (2009).

[8]    *Id.* at 670.

[9]    *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]  No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16]  However, "the tenet that a court must accept

---

[10]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]  *Id.*
[12]  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).
[13]  *Twombly*, 550 U.S. at 556.
[14]  *Iqbal*, 556 U.S. at 679.
[15]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).
[16]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

### B. Facts Alleged in the Third Amended Complaint

The facts alleged in the Third Amended Complaint, which I must accept as true for the purposes of this motion, are as follows.

Plaintiff James R. Elliott lives in Scranton, Pennsylvania.[20] Since 1998, he has been a registered sports official with the PIAA, officiating basketball, football, and baseball games.[21] The PIAA is an organization that was established by high school principals to "eliminate abuses, establish uniform rules, and place

---

[17] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[18] *Id. See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[19] *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).

[20] Doc. 42 at ¶ 1.

[21] *Id.* at ¶ 21.

interscholastic athletics in the context of secondary education."[22]  Otherwise stated, "[t]he purpose and function of [the] PIAA is to develop and enforce rules, which are authorized or adopted by the member schools, regulating interscholastic athletic competition."[23]  As part of this mission, the PIAA hires sports officials from a pool of qualified officials to officiate games among member schools.[24]

The PIAA is divided into twelve geographic districts.[25]  Member schools in each district elect a district committee, which in turn elects a chairman to represent the district on the PIAA Board of Directors.[26]  Further, PIAA officials must join a local PIAA officiating chapter.[27]

Elliott is a member of the Scranton basketball chapter, the Lackawanna County baseball chapter, and the Wyoming Valley football chapter.[28]  Elliott has also served as the rules interpreter for the Scranton basketball chapter since 2013.[29]  Elliott has further served as an official for district and state playoff games and tournaments in each sport he officiates.[30]  He has thus been acknowledged by the PIAA to be a "very good official."[31]

---

[22] *Id.* at ¶ 11.
[23] *Id.* at ¶ 12.
[24] *Id.* at ¶ 15.
[25] *Id.* at ¶ 13.
[26] *Id.*
[27] *Id.* at ¶ 16.
[28] *Id.* at ¶ 22.
[29] *Id.* at ¶ 25.
[30] *Id.* at ¶ 27.
[31] *Id.* at ¶ 28.

Elliott officiates in District 2, whose Officials' Representative at all relevant times herein was William Schoen.[32]  As Officials' Representative, Schoen was a member of the district committee, assigned officials to district playoff games, submitted officials' names for state playoff games, and helped select the district's rules interpreter for basketball games.[33]  Schoen had delegated his responsibility of selecting district basketball playoff officials to Joe Ross and Frank Majikes, District 2 Committee Chairman.[34]  Member schools also paid Schoen to assign regular-season football games.[35]

In December 2016, Elliott's brother, Dave Elliott, ran against William Schoen for the position of the PIAA District 2 Officials' Representative.[36]  Elliott supported his brother's candidacy and asked other officials to vote for his brother.[37]  In January 2017, the PIAA declared Schoen the winner of this election.[38]

After the election, Schoen began retaliating against Elliott and his family.[39] For years, Elliott's sister, Kim Cwalinski, had worked as a "ticket taker" at PIAA playoff games.[40]  But in February and March 2017, Schoen stopped using Cwalisnki at playoff games.[41]

---

[32]  *Id.* at ¶ 7.
[33]  *Id.* at ¶¶ 7, 47, 72–73, 100–01, 261.
[34]  *Id.* at ¶ 171.
[35]  *Id.* at ¶¶ 7, 43.
[36]  *Id.* at ¶ 32.
[37]  *Id.* at ¶ 33.
[38]  *Id.* at ¶ 34.
[39]  *Id.* at ¶ 38.
[40]  *Id.* at ¶ 41.
[41]  *Id.* at ¶ 42.

Later that year, Schoen stopped assigning Dave Elliott to regular-season football games.[42]  Such retaliation forced Dave Elliott to transfer to the Wyoming Valley football chapter.[43]  But even after Dave Elliott transferred, Schoen refused to assign him football playoff games.[44]  Schoen also did not assign James Elliott football playoff games in 2017.[45]

In or around August 2017, the District 2 basketball interpreter position became vacant.[46]  By custom, the PIAA agrees to the Officials' Representative's choice for this position.[47]  And though Elliott was the only official to apply,[48] Schoen and Majikes instead selected Bruce Weinstock in December 2017.[49]  Upon Schoen and Majikes's recommendation, PIAA Assistant Executive Director, Patrick Gebhart, formally appointed Weinstock to the interpreter position.[50]

The same month, Weinstock confessed, "I don't know why I was selected because I didn't apply for the job."[51]  Indeed, Weinstock had not served as an interpreter before.[52]  And in January 2018, Schoen's friend Chris Thomas

---

[42]  *Id.* at ¶ 44.
[43]  *Id.* at ¶ 46.
[44]  *Id.* at ¶ 47.
[45]  *Id.* at ¶¶ 100–12.
[46]  *Id.* at ¶ 55.
[47]  *Id.* at ¶¶ 72–73.
[48]  *Id.* at ¶ 58.
[49]  *Id.* at ¶¶ 78–79.
[50]  *Id.* at ¶ 79.
[51]  *Id.* at ¶ 81.
[52]  *Id.* at ¶ 80.

acknowledged to Elliott that Schoen did not appoint Elliott as interpreter because Elliott had supported his brother's candidacy in 2016.[53]

Schoen also retaliated against other officials, keeping them from working playoff games.[54] When officials asked Schoen about this, he blamed Gebhart.[55] But when these officials complained to Gebhart, he informed them that Schoen had omitted them from the eligibility list for playoff games.[56] To avoid further retaliation from Schoen, football official Jim Miller transferred to the Wyoming Valley football chapter.[57]

Elliott followed suit, transferring to the Wyoming Valley football chapter in 2018.[58] The assignor there, Russ Davis, assigned Elliott a full schedule of games.[59] But again, Schoen kept Elliott from officiating at state football playoff games in 2018.[60]

Fearing further retaliation, Elliott decided to run against Schoen in the 2018 District 2 Officials' Representative election.[61] As a local chapter's nomination is necessary to run for the position,[62] Schoen attempted to dissuade the Wyoming

---

[53] *Id*. at ¶ 82.
[54] *Id*. at ¶ 109.
[55] *Id*. at ¶ 110.
[56] *Id*. at ¶ 111.
[57] *Id*. at ¶ 119.
[58] *Id*. at ¶ 121.
[59] *Id*. at ¶ 122.
[60] *Id*. at ¶ 124.
[61] *Id*. at ¶ 130.
[62] *Id*. at ¶ 131.

Valley football chapter from nominating Elliott.[63]   Elliott was thus instead nominated to the position by the Scranton basketball chapter.[64]   During the election, Luke Modrovsky, a sports official and former PIAA intern, accessed the PIAA Survey Monkey account, monitored the election results, and communicated the daily results to Majikes, Schoen, and others.[65]

Shortly after this December 2018 election, Joe Ross, a local assignor, told Majikes that he was assigning Elliott to a district basketball championship game.[66] But Majikes blocked this assignment.[67]   When Elliott complained to Ross about the retaliation, Ross responded that there was nothing he could do.[68]   Majikes had also retaliated against other officials, including Michael Amory, who was forced to transfer to the Scranton basketball chapter.[69]

After Elliott sued in 2019, the retaliation continued.[70]   In 2019 and 2020, Schoen did not assign Elliott any district football playoff games, and Gebhart did not assign him any state football playoff games.[71]   Gebhart also demoted Elliott during a state basketball playoff game in 2020.[72]   Finally, in 2021, Schoen and

---

[63]   *Id*. at ¶¶ 132–39.
[64]   *Id*. at ¶¶ 140–42.
[65]   *Id*. at ¶¶ 9, 155, 159.
[66]   *Id*. at ¶ 177.
[67]   *Id*. at ¶ 178.
[68]   *Id*. at ¶ 184.
[69]   *Id*. at ¶¶ 187–89.
[70]   *Id.* at ¶ 190.
[71]   *Id.* at ¶¶ 191–92, 194.
[72]   *Id.* at ¶ 193.

Majikes did not assign Elliott any district basketball playoff games, and Gebhart did not assign Elliott any state playoff basketball games.[73]

### C.    Analysis

#### 1.    Count One

First, Elliott sues the PIAA under 42 U.S.C. § 1983, alleging failures to promulgate policies, enforce policies, train, discipline, and provide remedial measures. "The parties do not dispute that the PIAA is a state actor for section 1983 purposes."[74]  For the PIAA's failure to train its assignors, district chairmen, and officials' representatives to "rise to the level of an official government policy for purposes of § 1983,"[75] this failure to train must "amount[] to deliberate indifference to the rights of persons with whom the [untrained individuals] come into contact."[76] This "deliberate indifference" standard also applies to the other claims in Count One.[77]

---

[73]  *Id.* at ¶ 195.

[74]  *Rottmann v. Pennsylvania Interscholastic Athletic Ass'n., Inc.*, 349 F. Supp. 2d 922, 926 (W.D. Pa. 2004).

[75]  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[76]  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[77]  *See Est. of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019) ("We consider allegations of failure to train, supervise, and discipline together because they fall under the same species of municipal liability."); *Christopher v. Nestlerode*, 240 F. App'x 481, 490 (3d Cir. 2007) ("Christopher contends Hose and the County were liable for failure to promulgate policies, failure to train, and failure to monitor or supervise. We apply the same 'deliberate indifference' standard to all three arguments."); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("Section 1983 would impose liability for La Penta's inadequate training and discipline only if the Plymouth Police Department was deliberately indifferent to the rights of persons with whom he came in contact.").

Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is" necessary "to demonstrate deliberate indifference for purposes of failure to train."[78]  "A pattern of violations puts . . . decisionmakers on notice that a new program is necessary . . . ."[79]  "Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger [entity] liability."[80]

"Causation is a requirement for . . . liability that is separate from deliberate indifference."[81]  Causation involves more than "showing that . . . employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury."[82]  Instead, causation requires that "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect."[83]

Here, Elliott alleges that Defendants retaliated against him for supporting his brother's candidacy.[84]  But Elliott also alleges that Schoen retaliated by not hiring his sister as a "ticket taker" and not assigning his brother to games.[85]  Schoen and

---

[78]  *Connick*, 563 U.S. at 62.
[79]  *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).
[80]  *Bd. of Cnty. Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 407 (1997).
[81]  *Thomas*, 749 F.3d at 226.
[82]  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991).
[83]  *Canton*, 489 U.S. at 391.
[84]  Doc. 42 at ¶¶ 33, 38.
[85]  *Id.* at ¶¶ 39–47.

Majikes retaliated against other officials too, including Jim Miller and Michael Amory.[86]  These allegations permit an inference of a pattern of retaliation and therefore of deliberate indifference.

Similarly, Elliott alleges that various officials contacted the PIAA to complain about Schoen's retaliation in 2017.[87]  But Patrick Gebhart, PIAA's Assistant Executive Director, responded that Schoen had omitted them from the eligibility list.[88]  Elliott also complained about retaliation to a local assignor, Joe Ross.[89]  Again, Ross responded that "there was nothing he could do."[90]  Such complaints permit an inference that the PIAA had notice of retaliation but disregarded it.

Moreover, these repeated instances of and complaints about retaliation increase "[t]he likelihood that the situation will recur and the predictability that [Defendants] . . . will violate citizens' rights."[91]  In turn, "[t]he high degree of predictability may also support an inference of causation—that the [PIAA's] indifference led directly to the very consequence that was so predictable."[92]  Because Elliott has plausibly alleged deliberate indifference and causation, Defendants' motion to dismiss Count One is denied.

---

[86]  *Id.* at ¶¶ 118–21, 187–89.
[87]  *Id.* at ¶ 111.
[88]  *Id.*
[89]  *Id.* at 184.
[90]  *Id.*
[91]  *Bryan Cnty.*, 520 U.S. at 409.
[92]  *Id.* at 409–10.

## 2.    Count Two

Next, Elliott alleges that Majikes, Schoen, Gebhart, and Modrovsky retaliated against him in violation of the First Amendment to the United States Constitution. "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."[93]  "The first factor is a question of law; the second factor is a question of fact."[94]

Here, Elliott alleges that he supported his brother's candidacy in the 2016 PIAA District 2 Officials' Representative election, asking other officials to vote for his brother.[95]  Elliott also alleges that he ran for District 2 Officials' Representative in 2018.[96]  The First Amendment protects both activities.[97]  Accordingly, Elliott has sufficiently alleged the first requirement of First Amendment retaliation.

In response, Defendants assert qualified immunity.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[98]  The

---

[93]  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

[94]  *Id.*

[95]  Doc. 41 at ¶ 33.

[96]  *Id.* at ¶ 130.

[97]  *See Buckley v. Valeo*, 424 U.S. 1, 52 (1976) ("The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates."); *see also Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir. 1987) ("A citizen's right not to support a candidate is every bit as protected as his right to support one.").

[98]  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

Court has the "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[99]

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"[100]  "[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'"[101]  And "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[102]

### a.    District 2 Rules Interpreter

Since 2013, Elliott has served as the rules interpreter for the Scranton basketball chapter.[103]  Schoen informed Elliott that he was impressed with the trainings Elliott held as an interpreter.[104]  And on numerous occasions, Schoen

---

[99]  *Id.*

[100]  *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[101]  *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (quoting *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017)).

[102]  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[103]  Doc. 42 at ¶ 48.

[104]  *Id.* at ¶ 53.

informed Elliott that he would appoint Elliott as District 2's interpreter if the position ever became available.[105]

The position became available in or around August 2017, when James Gross resigned.[106] Gross informed Elliott that he would recommend Elliott as his successor.[107] The Scranton basketball chapter also recommended Elliott for the position.[108] Indeed, only Elliott applied for the position.[109]

To select District 2's next interpreter, Majikes formed a committee consisting of himself, Schoen, and Maureen Williams.[110] Schoen and Majikes submitted Bruce Weinstock's name to Gebhart, PIAA's Assistant Executive Director.[111] Per PIAA's custom of abiding by the District Offficials' Representative's choice,[112] Gebhart appointed Weinstock to the interpreter position.[113]

But Weinstock had never served as an interpreter before.[114] Weinstock also confessed, "I don't know why I was selected because I didn't apply for the job."[115] In a January 2018 phone call, Schoen's friend Chris Thomas admitted that Schoen

---

[105] *Id.* at ¶ 54.
[106] *Id.* at ¶ 55.
[107] *Id.* at ¶ 56.
[108] *Id.* at ¶ 76.
[109] *Id.* at ¶ 58.
[110] *Id.* at ¶ 86.
[111] *Id.* at ¶ 79.
[112] *Id.* at ¶¶ 72–73.
[113] *Id.* at ¶ 55.
[114] *Id.* at ¶ 80.
[115] *Id.* at ¶ 81.

did not appoint Elliott as interpreter in retaliation for Elliott's support of his brother in the 2016 election.[116]

These allegations of Elliott's lone application and his qualifications relative to Weinstock's support an inference of retaliation, as do the allegations of Schoen's initially positive impressions of Elliott's suitability for the interpreter position. Thomas's alleged statement also bolsters this inference.  In sum, Elliott has plausibly alleged that Schoen did not submit his name for the interpreter position in 2017 because Elliott supported his brother's candidacy in 2016.[117]   And by retaliating against Elliott for supporting his brother's candidacy, Schoen violated clearly-established law.[118]   Accordingly, Schoen is denied qualified immunity at this stage for not submitting Elliott's name for the interpreter position in 2017.

After initially denying his involvement,[119] Majikes allegedly admitted to Elliott that he was on the committee that decided not to submit Elliott's name for the interpreter position.[120]   Majikes also told Elliott that the committee only considered candidates' length of service,[121] even though Weinstock was not the longest-serving

---

[116] *Id.* at ¶ 82.

[117] *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) ("[T]he proffered evidence, looked at as a whole, may suffice to raise the inference" of causation).

[118] *See Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 429 (3d Cir. 2020) ("The law is clearly established that Doerr may not retaliate against Starnes for exercising her First Amendment rights."); *see also Williams v. City of Allentown*, 804 F. App'x 164, 169 (3d Cir. 2020) ("The Supreme Court has clearly established that a government employer cannot retaliate against an employee when he speaks as a private citizen or associates with a political candidate.").

[119] *Id.* at ¶ 93.

[120] *Id.* at ¶ 93.

[121] *Id.* at ¶ 95.

official in District 2.[122]  These allegations of Majikes's forming the committee, being involved, denying his involvement, and giving a purportedly pretextual reason for Weinstock's selection permit the inference that Majikes retaliated against Elliott. And by retaliating against Elliott for supporting his brother's candidacy, Majikes violated clearly-established law.  Accordingly, Majikes is denied qualified immunity at this stage for not submitting Elliott's name for the interpreter position in 2017.

### b.    Football Playoffs

Elliott alleges that as District 2 Officials' Representative, Schoen was responsible for assigning district playoff games and submitting officials' names for state playoff games.[123]  Before the 2016 District 2 Officials' Representative election, Schoen had assigned Elliott a full schedule of regular-season games, district playoffs, and district championships.[124]  And in November 2016, the month before that election, Schoen submitted Elliott's name for the 2016 state football playoffs.[125] Indeed, Schoen had done so for approximately ten consecutive years.[126]

But after Elliott supported his brother's candidacy and asked other officials to vote for his brother in the December 2016 election,[127] Schoen did not assign Elliott any district football playoff games in 2017.[128]  Nor did Schoen submit Elliott's name

---

[122] *Id.* at ¶ 97.
[123] *Id.* at ¶¶ 7, 47, 100–01, 261.
[124] *Id.* at ¶ 102.
[125] *Id.* at ¶ 104.
[126] *Id.* at ¶ 102.
[127] *Id.* at ¶ 33.
[128] *Id.* at ¶ 285.

for the state football playoff games in 2017.[129]  And in 2018, Schoen neither assigned Elliott any district football playoff games nor submitted Elliott's name for state football playoff games.[130]  These allegations about Schoen's conduct before and after the 2016 election permit the inference that Schoen did not assign Elliott 2017 and 2018 football playoff games because Elliott supported his brother's candidacy in 2016.

In December 2018, Elliott ran against Schoen for District 2 Officials' Representative.[131]  So in 2019, Schoen did not assign Elliott any district football playoff games and did not include him on the list of officials eligible to work state playoff games.[132]  Schoen did the same in 2020 as well.[133]  Again, these allegations permit the inference that Schoen did not assign Elliott 2019 and 2020 football playoff games because Elliott ran against him in 2018 and supported his brother's candidacy in 2016.  By retaliating against Elliott for running in an election and supporting a candidate in an election, Schoen violated clearly-established law.  Accordingly, Schoen is denied qualified immunity at this stage for refusing to assign Elliott football playoff games.

Defendants counter that as an independent contractor, Elliott had no guarantee or right to be hired to do any game.  But the Supreme Court of the United States has

---

[129] *Id.* at ¶ 105.
[130] *Id.* at ¶¶ 122–24, 285.
[131] *Id.* at ¶ 130.
[132] *Id.* at ¶ 191.
[133] *Id.* at ¶¶ 194, 285.

held that "[t]he First Amendment protects independent contractors from . . . retaliation for their exercise of the freedom of speech."[134]   Since that decision, various federal courts of appeals have held that First Amendment retaliation against independent contractors violates clearly-established law.[135]   So have district courts within the Third Circuit.[136]   Accordingly, Elliott's independent-contractor status does not vitiate his claims at this stage.

### c.    2018 Election

### i.    Nomination

Elliott alleges that Schoen retaliated against him by trying to keep him from running in the 2018 District 2 Officials' Representative election.  Specifically, Elliott

---

[134] *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 668 (1996).

[135] *See Golodner v. Berliner*, 770 F.3d 196, 207 (2d Cir. 2014) ("Based on the relevant case law at the time of the individual defendants' alleged retaliatory actions, we have no trouble concluding that the constitutional right implicated here was clearly established."); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1110 (9th Cir. 2011) ("We therefore agree with Clairmont that the law was clearly established at the time of his alleged retaliatory firing."); *Glover v. Mabrey*, 384 F. App'x 763, 779 (10th Cir. 2010) ("Glover's constitutional protection was clearly established at the time these individual defendants engaged in the alleged retaliation. The district court's denial of these defendants' motion to dismiss and claim of qualified immunity is AFFIRMED."); *Hous. Works, Inc. v. Guiliani*, 56 F. App'x 530, 533 (2d Cir. 2003) (holding that the district court "properly rejected the defendants' arguments that they enjoyed qualified immunity against the plaintiffs' claims of First Amendment retaliation.").

[136] *See DeLuca v. City of Hazleton*, 396 F. Supp. 3d 392, 411 (M.D. Pa. 2019) ("Because only the plainly incompetent would believe that Plaintiffs could be removed from the towing rotation for their political association, qualified immunity in favor of Yannuzzi on the First Amendment retaliation claim is not warranted."); *Springer v. Henry*, No. 00-885(GMS), 2002 WL 389136, at *6 (D. Del. Mar. 11, 2002) ("Thus, the Supreme Court has recognized on at least two occasions that an independent contractor—such as Dr. Springer—- has a constitutional right to free speech. Therefore, it cannot be more clear that this right was clearly established."); *Downey v. Coal. Against Rape & Abuse, Inc.*, 143 F. Supp. 2d 423, 450 (D.N.J. 2001), *aff'd*, 142 F. App'x 645 (3d Cir. 2005) ("It is clearly established that . . . independent contractors should be free from official retaliation for exercising their First Amendment rights.").

alleges that Schoen contacted members of the Wilkes-Barre football chapter to prevent them from nominating Elliott, met privately with the Wyoming Valley football chapter's leaders to request that they nominate him instead of Elliott, and took these chapter leaders out for drinks to garner support for his re-election.[137]

But Schoen's campaigning against Elliott's nomination was itself a protected activity.[138]  At the very least, such campaigning did not violate clearly-established law.  Accordingly, Elliott's claim involving Schoen's campaigning is dismissed on qualified-immunity grounds.

### ii.    Election

Elliott also alleges that in the 2018 District 2 Officials' Representative election, Modrovsky "was able to gain access to the election voting system, monitor the election results, and communicate the results to Defendants Majikes and Schoen and their supporters to help Schoen and injure Mr. Elliott."[139]  But Elliott does not cite precedent indicating that accessing, monitoring, or prematurely communicating election results violates clearly-established law.  The Court could not locate such precedent either.  Accordingly, Elliott's claim against Modrovsky in Count Two is dismissed on qualified-immunity grounds.  To the extent Elliott raises any claims

---

[137] Doc. 42 at ¶¶ 132–39.

[138] *See Briggs v. Potter Cnty.*, 787 F. App'x 123, 130 (3d Cir. 2019) ("Hunt's and Briggs's campaigns against Drake are also protected associational activities.).

[139] Doc. 42 at ¶ 164.

against Majikes and Schoen involving this conduct, those claims are dismissed on qualified-immunity grounds as well.

### d.    Basketball Playoffs

Elliott alleges that Majikes selected officials for basketball playoffs.[140] Before the 2018 District 2 Officials' Representative election, Elliott had officiated approximately fifteen consecutive district championship and consolation games without Majikes's objecting.[141]  And during Majikes's tenure as assignor of NCAA games, Majikes had ranked Elliott as one of the better basketball officials.[142] Indeed, Joe Ross had assigned Elliott a full schedule of basketball games in the 2018-2019 regular season.[143]

Soon after Elliott ran against Schoen in December 2018, the 2019 district championship games began.[144]  And Ross informed Majikes that he was assigning Elliott one of the five district championship games.[145]  But Majikes blocked Ross from assigning Elliott any of these games.[146]  These allegations about Majikes's conduct before and after the December 2018 election, combined with the allegation that Majikes similarly retaliated against another basketball official (Michael Amory)

---

[140] Doc. 42 at ¶¶ 168, 171.
[141] *Id.* at ¶ 186.
[142] *Id.* at ¶ 185.
[143] *Id.* at ¶ 176.
[144] *Id.* at ¶ 165.
[145] *Id.* at ¶ 177.
[146] *Id.* at ¶ 178.

in 2019,[147] permit the inference that Majikes blocked Elliott from officiating the 2019 district championship games because Elliott ran against Schoen in December 2018.  By retaliating against Elliott for running in an election, Majikes violated clearly-established law.  Accordingly, Majikes is denied qualified immunity at this stage for blocking Elliott from officiating at basketball playoff games.

### e.      Patrick Gebhart

### i.      Conduct Before April 29, 2019

Elliott first attempted to add Patrick Gebhart as a defendant in his Third Amended Complaint on April 28, 2021.[148]  But "[t]he statute of limitations for a § 1983 claim arising in Pennsylvania is two years."[149]  So this statute of limitations bars Elliott's claims involving Gebhart's conduct before April 28, 2019.

Moreover, Elliott deposed Gebhart in July 2019.[150]  His original 2019 complaint also references Gebhart.[151]  Because Elliott "had been aware of the identity of the newly named [Gebhart] when [he] filed [his] original complaint and simply chose not to sue [Gebhart] at that time," his Third Amended Complaint "will not relate back."[152]

---

[147] *Id.* at ¶ 188.
[148] *Id.* at 1.
[149] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).
[150] *See* Doc. 50 at 23.
[151] *See* Doc. 1-2 at 8.
[152] *Garvin v. City of Philadelphia*, 354 F.3d 215, 221 (3d Cir. 2003).

In his brief opposing Defendants' motion to dismiss, Elliott does not dispute that he untimely sued for Gebhart's conduct before April 28, 2019.[153]  Indeed, Elliott does not address the statute of limitations or the relation-back doctrine at all.[154]  Accordingly, Elliott's claim involving Gebhart's conduct before April 28, 2019, is dismissed as time-barred.

### ii.    Conduct After April 29, 2019

Elliott alleges that Gebhart demoted him during a state playoff basketball game in 2020.[155]  But Elliott does not allege details connecting this 2020 demotion to his protected activity in 2018 and 2016.  Because Elliott does not plausibly allege causation, his claim about Gebhart's demoting him is dismissed for failure to state a claim.[156]

Elliott further alleges that Gebhart did not assign him any state football playoff games in 2019 and 2020 and did not assign him any state playoff basketball games in 2021.[157]  "A defendant in a civil rights action must have personal involvement in

---

[153] *See* Doc. 51.

[154] *See Id.*

[155] Doc. 42 at ¶ 193.

[156] *See Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*, 816 F. App'x 670, 675 (3d Cir. 2020) ("[N]one of Curley's factual allegations, even if assumed true, provides a basis for a finding of the critical causal link between protected speech and retaliatory acts. For that reason, Curley's complaint failed to plead a plausible First Amendment retaliation claim."); *see also Falco v. Zimmer*, 767 F. App'x 288, 313 (3d Cir. 2019) ("But that, we determine, a reasonable trier of fact could not do in light of a record that evinces little to no other evidence of a causal link. We thus conclude that Falco's support for political candidates opposed to Zimmer was not a substantial or motivating factor of Appellees' denial of Falco's request for a written contract.").

[157] Doc. 42 at ¶¶ 192–95.

the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."[158]  "Personal involvement can be shown when a supervisor either personally directs the retaliatory action or has actual knowledge of, and acquiesces in, the retaliatory action."[159]

Here, Schoen submitted officials' names for state playoff games.[160]  As I explained above, Elliott has alleged facts permitting an inference that Schoen retaliated against Elliott by not submitting his name for state playoff games.  Even after officials complained to Gebhart about Schoen's retaliatory recommendations for state playoff games,[161] Gebhart continued to abide by them.[162]

At the pleading stage, these allegations permit the inference that Gebhart knew about, acquiesced in, and was therefore involved in Schoen's retaliatory recommendations.  And because Elliott has plausibly alleged Gebhart's involvement in First Amendment retaliation, Gebhart is denied qualified immunity at this stage for not assigning Elliott state playoff games.

### 3.    Count Three

Finally, Elliott alleges that the PIAA violated the NPCA during the 2018 District II Officials' Representative election.   "[V]iolations of [this] Law entitle

---

[158] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).
[159] *Queer v. Westmoreland Cnty.*, 296 F. App'x 290, 295 (3d Cir. 2008).
[160] Doc. 42 at ¶ 7.
[161] *Id.* at ¶ 17.
[162] *Id.* at ¶ 282.

Plaintiffs to equitable remedies, but no legal damages."[163]  Thus, Elliott's damages claim under the NPCA is dismissed.

That leaves Elliott's NPCA claim for declaratory and injunctive relief.  Elliott did not seek such relief during or immediately after the 2018 District II Officials' Representative election.  So Defendants argue that injunctive relief is no longer available for the 2018 election, rendering Elliott's claim moot.[164]

Elliott counters that the Court already allowed his NPCA claim to proceed in its September 15, 2020, Memorandum Opinion.[165]  Indeed, Defendants first raised a mootness challenge in the instant motion to dismiss.  But "a mootness challenge is never waivable" because "mootness implicates the subject matter jurisdiction of the federal courts under Article III."[166]  Accordingly, the Court's prior Memorandum Opinion does not preclude Defendants' mootness challenge here.

Elliott further counters that his NPCA claim is not moot because "there is a reasonable likelihood that the parties or those in privity with them will be involved

---

[163]  *Lilly v. Boots & Saddle Riding Club*, No. 57 C.D. 2009, 2009 WL 9101459, at *9 (Pa. Commw. Ct. July 17, 2009) ("What remains for this Court to review of Count III is the economic damages, which, as discussed, are not recoverable.").

[164]  *See Brennan v. William Paterson Coll.*, 492 F. App'x 258, 265 (3d Cir. 2012)  ("In this case Brennan's appeal against the Township is moot basically because the election in which he was a candidate long since has been held.").

[165]  Doc. 25.

[166]  *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 447 F. App'x 399, 402 (3d Cir. 2011); *see also Brown v. Philadelphia Hous. Auth.*, 350 F.3d 338, 347 (3d Cir. 2003) ("The fact that PHA did not raise its mootness claim earlier in the proceedings cannot and does not confer jurisdiction on this Court, nor in the absence of a live Article III controversy can it provide District Court jurisdiction in this case. Defenses relating to subject matter jurisdiction can be raised at any time.").

in a suit on the same issues in the future."[167]  "The capable-of-repetition doctrine is a narrow exception that applies only in exceptional situations where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[168]  "Both of these conditions must be met if a case is to be saved from mootness."[169]  "A plaintiff bears the burden to show that the 'capable of repetition yet evading review' exception applies."[170]

Elliott does not meet this burden here.  He does not allege, aver, or otherwise assert that the challenged conduct is too short in duration to be fully litigated before cessation or expiration.[171]  So Elliott fails to meet the first condition.[172]

As for the second condition, Elliott does not adduce "affirmative evidence" of a reasonable expectation that he will be subject to the same conduct again.[173]  Instead, Elliott claims that "we have no way of knowing if the breaches have been corrected and/or will continue into the future."[174]  But this is "too speculative," "and

---

[167] *Am. Bible Soc. v. Blount*, 446 F.2d 588, 595 (3d Cir. 1971).

[168] *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (citation and internal quotation marks omitted).

[169] *New Jersey Tpk. Auth. v. Jersey Cent. Power & Ligh*t, 772 F.2d 25, 31 (3d Cir. 1985).

[170] *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 231 (3d Cir. 2021), *cert. denied sub nom. Butler Cnty., Pennsylvania v. Wolf*, 142 S. Ct. 772 (2022).

[171] Docs. 42, 51.

[172] *See Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) ("Neither of the elements required to invoke this exception to the mootness doctrine is present here. First, Abdul–Akbar does not assert that mootness could be avoided on the ground that inmates at MSU fail to remain confined in that facility for a sufficient length of time to fully litigate a legal claim.").

[173] *New Jersey Tpk.*, 772 F.2d at 34 ("The 'capable of repetition, yet evading review' exception being inapposite, we can reach no other conclusion than that this case is moot.").

[174] Doc. 51 at 19.

more than speculation is required to invoke the capable-of-repetition exception."[175]

Because Elliott fails to meet both conditions of the capable-of-repetition exception,

his claim for declaratory and injunctive relief under the NPCA is moot.  Thus, Count

Three is dismissed.

## III.   CONCLUSION

Defendants' motion to dismiss is denied in part and granted in part.  "Among

the grounds that could justify a denial of leave to amend are undue delay, bad faith,

dilatory motive, prejudice, and futility."[176]  Amendment would be futile here because

Elliott has already amended thrice.  Amendment would also unduly delay litigation

after two-and-a-half years at the pleading stage alone.  Accordingly, leave to amend

is not granted.  The remaining Defendants (i.e., the PIAA, Majikes, Schoen, and

Gebhart) have twenty-one days from today's date to file an answer to the surviving

claims in Elliott's Third Amended Complaint.    An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[175] *Hamilton*, 862 F.3d at 336–37 ("Consequently, while there is a 'theoretical possibility that S.H. will again be placed in a group home where Hamilton cannot contact him, that possibility is not enough to invoke the capable-of-repetition exception."); *see also United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 209 (3d Cir. 2016) ("Without such evidence, we are left to speculate. That is not enough to trigger the 'capable of repetition, yet evading review' exception to the mootness doctrine.").

[176] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).